UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA

                      Plaintiff,                  Case No.: 19-cv-7297 (VC)

v.

COHEN, WEISS AND SIMON LLP, DAVID R.
HOCK, JANI K. RACHELSON, and MARCELLE
J. HENRY

                      Defendants.

_____

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANTS COHEN, WEISS AND SIMON LLP, JANI K. RACHELSON and MARCELLE J. HENRY

Defendants COHEN, WEISS and SIMON, LLP ("Cohen Weiss"), JANI K. RACHELSON ("Ms. Rachelson") and MARCELLE J. HENRY ("Ms. Henry") (collectively, "CWS"), by and through their undersigned attorneys, as and for their Answer, Affirmative Defenses and Counterclaims against TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA ("Travelers"), allege as follows:

## ANSWER

1.      Admit that Travelers has styled its action as one for rescission of a professional liability insurance policy (the "Policy") and a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, but deny that there is any merit to Travelers' action and further state that CWS has brought counterclaims against Travelers for declaratory judgment, breach of contract, breach of the implied duty of good faith and fair dealing, and violation of New York General Business Law § 349 arising out of Travelers' failure to properly defend the Underlying Claims against Cohen Weiss, Ms. Rachelson, and Ms. Henry, and improper attempt to use this belated action for

rescission as a pressure point to avoid fully funding reasonable settlements of those Underlying Claims. Those causes of action against Travelers are set forth in greater detail below. *See generally* Counterclaims, ¶¶ 1 - 93.

2.      Admit that Travelers seeks to rescind the Policy on the basis set forth in paragraph 2 of its Complaint, but deny that CWS made any material misrepresentation, omission, concealment of fact or incorrect statement in Cohen Weiss' application for the Policy, and further deny that it was a false statement on the application that at the time none of its members or employees had any knowledge of any incident, act, error or omission that was or could be the basis of a claim under the Policy.

## PARTIES

3.      Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 3 of the Complaint.

4.      Admit the allegations contained in paragraph 4 of the Complaint except further state that certain of Cohen Weiss' partners are also citizens of New Jersey.

5.      Admit the allegations contained in paragraph 5 of the Complaint that David R. Hock ("Mr. Hock") was an attorney admitted to practice law in the state of New York until he surrendered his law license effective December 19, 2018, was employed by Cohen Weiss beginning in 2003, and was a partner from July 1, 2012 until September 18, 2017 but deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning where Mr. Hock is domiciled or of which state he is a citizen.

6.      Admit the allegations contained in paragraph 6 of the Complaint that Ms. Rachelson is an attorney, admitted to practice law in New York and a partner of Cohen Weiss,

but deny the remaining allegations contained in paragraph 6 of the Complaint, and state that Ms.

Rachelson is domiciled in and a citizen of New Jersey.

7.      Admit the allegations contained in paragraph 7 of the Complaint and further state

that Ms. Henry was employed by or a partner at Cohen Weiss from 2008 to November 2017.

## JURISDICTION AND VENUE

8.      The allegations contained in paragraph 8 of the Complaint state a legal conclusion

to which no answer is required.

9.      The allegations contained in paragraph 9 of the Complaint state a legal conclusion

to which no answer is required.

## THE APPLICATION FOR PROFESSIONAL LIBAILITY INSURANCE

10.      Admit the allegations contained in paragraph 10 of the Complaint.

11.      Admit that the excerpt of Travelers 1st Choice+ Lawyers Professional Coverage

Application, dated April 25, 2017 (the "Application") to which Travelers cites in paragraph 11 of

the Complaint is quoted correctly, but deny that the excerpt reflects the full terms of the

Application, and refer the Court and the parties to the Application and Policy for a full and

correct recitation of all of the terms contained in those documents.

12.      Admit that those excerpts of the Application to which Travelers cites in paragraph

12 of the Complaint are quoted correctly but deny that those excerpts reflect the full terms of the

Application, and refer the Court and the parties to the Application and Policy for a full and

correct recitation of all of the terms contained in those documents.

## THE INSURANCE POLICY

13.      Deny knowledge or information sufficient to form a belief as to the truth or falsity

of the allegation contained in Paragraph 13 of the Complaint that Travelers issued the Policy in

reliance on the Application (which allegation also states a legal conclusion to which no answer is required), but admit that Travelers issued the Policy, which is a claims-made Travelers 1st Choice+ New York Lawyers Professional Liability Policy, No. 105806447, to Cohen Weiss for the policy period July 2, 2017 to July 2, 2018, and that the Policy that is attached to Exhibit A of the Complaint appears to be a true and correct copy.

14.     Admit the allegation contained in paragraph 14 of the Complaint that Cohen Weiss is listed in the Declarations included in the Policy as a **Named Insured[1]** but refer the Court and the parties to the Policy for a full and correct recitation of all of the terms contained therein.

15.     Admit the allegations contained in paragraph 15 of the Complaint that the Policy's limits of liability for "Professional Services" are $5,000,000 for each **Claim**, not to exceed $5,000,000 for all **Claims**, subject to the each **Claim** deductible of $25,000 for each **Claim** and $50,000 for all **Claims**, but refer the Court and the parties to the Policy for a full and correct recitation of all of the terms contained therein.

16.     Admit that those excerpts of Form LPL-1001NY2 Ed. 01-11 to the Policy's Insuring Agreement which Travelers cites in paragraph 16 of the Complaint are quoted correctly, but deny that those excerpts reflect the full terms of the Policy, and refer the Court and the parties to the Policy for a full and correct recitation of all of the terms contained in those documents.

17.     Admit that those excerpts of the definitions of **Claim**, **Insured**, **Insured Person** and **Principal Insured** to which Travelers cites in paragraph 17 of the Complaint are quoted correctly, but deny that those excerpts reflect the full terms of the Policy, and refer the Court and

---

[1] Terms appearing in bold text are defined in the Policy.

the parties to the Policy for a full and correct recitation of all of the terms contained in those documents.

## THE UNDERLYING CLAIMS

18.     Deny the allegations contained in paragraph 18 of the Complaint in which Travelers purports to generally describe and lump together the various claims by Teamsters Local 1205 Welfare Fund and Teamsters Local 1205 Pension Fund (the "Local 1205 Funds") and the Joint Industry Board of the Electrical Industry ("JIBEI") (collectively, the "Clients") but admit that the Clients have asserted **Claims** arising out of Mr. Hock's alleged mishandling of their respective legal matters (the "Underlying Claims"), which upon information and belief was the result of Mr. Hock's mental impairment that was undiagnosed and unknown to Mr. Hock, and was unknown to Cohen Weiss, Ms. Rachelson and Ms. Henry at all relevant times, including at the time of the Application, and refer the Court and the parties to the various demand letters of the Local 1205 Funds and JIBEI.

### *Local 1205 Funds Underlying Claims*

19.     Admit the allegations contained in paragraph 19 of the Complaint except deny that the Local 1205 Funds specifically retained Cohen Weiss to collect unpaid contributions and other amounts from, and pursue litigation against, certain employers including K-D Frame and Door Corporation ("K-D Frame"), Accent Hardwood Flooring & Supply Corp. ("Accent") and Gariboldi Insulation, Inc. ("Gariboldi"), or otherwise limited Cohen Weiss' representation of the Local 1205 Funds to those particular matters.

20.     Admit that the allegations contained in Paragraph 20 of the Complaint accurately describe the nature of the claims made by Local 1205 Funds arising out of Mr. Hock's alleged mishandling of their legal matters except deny that the Local 1205 Funds have ever claimed that

there were "other employers" besides K-D Frame, Accent, and Gariboldi, and further deny the truth of those allegations, including the existence and extent of the damages alleged by Local 1205 Funds.  To the extent the allegations of paragraph 20 of the Complaint state a legal conclusion(s), no response is required at this time.

21.    Admit that all the statements contained in paragraph 21 of the Complaint accurately describe the allegations by the Local 1205 Funds but deny the truth of those allegations.

22.    Admit that the allegations contained in Paragraph 22 of the Complaint accurately describe the nature of the claims made by Local 1205 Funds arising out of Mr. Hock's alleged mishandling of their legal matters but deny the truth of those allegations.  To the extent the allegations of paragraph 22 of the Complaint state a legal conclusion(s), no response is required at this time.

23.    Admit that the allegations contained in Paragraph 23 of the Complaint accurately describe the nature of the claims made by Local 1205 Funds arising out of Mr. Hock's alleged mishandling of their legal matters but deny the truth of those allegations.  To the extent the allegations of paragraph 23 of the Complaint state a legal conclusion(s), no response is required at this time.

24.    Admit that the allegations contained in Paragraph 24 of the Complaint accurately describe the nature of the claims made by Local 1205 Funds arising out of Mr. Hock's alleged mishandling of their legal matters but deny the truth of those allegations.  To the extent the allegations of paragraph 24 of the Complaint state a legal conclusion(s), no response is required at this time.

25.     Admit that the allegations contained in Paragraph 25 of the Complaint accurately describe the nature of the claims made by Local 1205 Funds arising out of Mr. Hock's alleged mishandling of their legal matters but deny that Local 1205 Funds have lost the right to collect certain amounts owed to them or that they would have achieved a more favorable result but for Mr. Hock's, Cohen Weiss', Ms. Rachelson's or Ms. Henry's purported actions.  To the extent that Local 1205 Funds allegations state a legal conclusion(s), no response is required at this time.

26.     Deny the allegations contained in paragraph 26 of the Complaint except as to Mr. Hock, and as to him, upon information and belief deny those allegations.  To the extent that the allegations contained in paragraph 26 of the Complaint state a legal conclusion(s), no response is necessary at this time.

### *JIBEI Underlying Claim*

27.     Admit the allegations contained in paragraph 27 of the Complaint.

28.     Admit the allegations contained in paragraph 28 of the Complaint.

29.     Admit that JIBEI has asserted a legal malpractice claim against Cohen Weiss and Mr. Hock as described by Travelers in paragraph 29 of the Complaint but deny the allegations asserted by JIBEI.  To the extent JIBEI's allegations as repeated by Travelers in paragraph 29 of the Complaint state a legal conclusion(s), no response is necessary at this time.

30.     Admit that Mr. Hock filed a state court action to recoup unpaid benefit contributions allegedly owed to JIBEI for the MTA project, and that the allegations contained in paragraph 30 of the Complaint accurately describe the nature of the claims made by JIBEI but deny the truth of those allegations.  To the extent the allegations of paragraph 30 of the Complaint state a legal conclusion(s), no response is required at this time.

31.     Admit that the state court action was dismissed with prejudice and that the allegations contained in paragraph 31 of the Complaint accurately describe the nature of the claims made by JIBEI but deny the truth of those allegations.

32.     Deny the allegations contained in paragraph 32 of the Complaint except admit that Mr. Hock made the statements attributed to him in the September 2016 status report and that the State Action was dismissed.

33.     Admit that as described by Travelers in paragraph 33 of the Complaint JIBEI has alleged that as a result of Mr. Hock's actions it has lost the opportunity to collect the full amount Gartech allegedly owes, but deny JIBEI's allegations.  To the extent JIBEI's allegations as repeated by Travelers in paragraph 33 of the Complaint state a legal conclusion(s), no response is necessary at this time.

34.     Deny the allegations contained in paragraph 34 of the Complaint with the exception of Mr. Hock, and as to him, upon information and belief deny those allegations.  To the extent that the allegations contained in paragraph 34 of the Complaint state a legal conclusion(s), no response is necessary at this time.

## COUNT I

### (Rescission of Policy)

35.     CWS realleges its responses to paragraphs 1-34 above as if set forth fully in paragraph 35 of the Complaint.

36.     Deny the allegations contained in paragraph 36 of the Complaint.  To the extent these allegations state or otherwise call for a legal conclusion, no response is required at this time.

37.      Deny the allegations contained in paragraph 37 of the Complaint.  To the extent these allegations state or otherwise call for a legal conclusion, no response is required at this time.

38.      Admit that the claims alleged by Local 1205 Funds and JIBEI constitute **Claims** under the Policy without admitting the truth of those allegations made by Local 1205 Funds or JIBEI.

39.      Deny the allegations contained in paragraph 39 of the Complaint there was any misrepresentation, omission, concealment of fact, or incorrect statement included in the Application, and deny knowledge or information sufficient to form a belief about the truth or falsity of Travelers' allegations that Travelers was materially affected by the contents of the Application and would not have issued the Policy had it known of certain facts concerning Mr. Hock's alleged mishandling of certain legal matters.  To the extent the allegations contained in paragraph 39 of the Complaint state or otherwise call for a legal conclusion, no response is required at this time.

40.      Deny that the Application contained a material misrepresentation, omission, concealment of fact, or incorrect statement.  While Cohen Weiss, Ms. Rachelson and Ms. Henry disagree with Travelers that Travelers is entitled to rescission, the remainder of the allegations contained in paragraph 40 of the Complaint concerning that the Court should rescind the Policy and declare that there is no coverage for any **Claim** made against any **Insured** call for a legal conclusion to which no further response is required at this time.

41.      Admit that Travelers tendered to Cohen Weiss a check for $97,160.00, which Travelers purports to represent the full amounts paid as premium for the Policy, but state that Cohen Weiss never cashed that check.

## AFFIRMATIVE DEFENSES

CWS asserts the following Affirmative Defenses and matters of avoidance, and reserve the right to amend the following as new facts become revealed through discovery:

### First Affirmative Defense
### (Failure to State a Cause of Action)

The Complaint fails to state a cause of action for rescission.

### Second Affirmative Defense
### (Waiver)

Travelers' sole count for rescission must be dismissed because Travelers' failed to promptly rescind the Policy after obtaining sufficient knowledge of the alleged misrepresentations, errors, and omissions in the Application upon which it now bases its rescission claim.

### Third Affirmative Defense
### (Ratification)

Travelers' sole count for rescission must be dismissed because, among other things, Travelers' failed to promptly return premiums after obtaining sufficient knowledge of the alleged misrepresentations, errors, and omissions in the Application upon which it now bases its rescission claim.

### Fourth Affirmative Defense

### (Laches)

Travelers' sole count for rescission is barred by the doctrine of laches because Travelers' unreasonable and inexcusable delay prejudiced CWS.

## DEMAND FOR ATTORNEYS FEES

CWS demands judgment for all of its attorney's fees and costs included in defending this action pursuant to *Mighty Midgets v. Centennial Ins. Co.*, 47 N.Y.2d 12 (1979).

## COUNTERCLAIMS OF COHEN WEISS, MS. RAHCELSON AND MS. HENRY

### Preliminary Statement

1.      CWS asserts counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of New York General Business Law § 349, and for declaratory relief arising out of Travelers' refusal to fulfill its coverage obligations to CWS with respect to claims for damages resulting from alleged malpractice committed by a former Cohen Weiss attorney David R. Hock who, upon information and belief, was suffering from an undisclosed mental impairment.  Travelers' failure to consent to and fully fund proposed settlements with the Local 1205 Funds and JIBEI is entirely predicated on Travelers' eleventh-hour attempt to rescind the Policy after almost two years from when Cohen Weiss first notified Travelers of the Underlying Claims, and as the risk increases that Local 1205 Funds and/or JIBEI will commence litigation.

2.      Travelers has never disputed that the Underlying Claims are covered.  Rather, Travelers now asserts in this belated coverage litigation that Cohen Weiss misrepresented on the application to the Policy that no one at Cohen Weiss had any knowledge of Mr. Hock's alleged mental impairment or the effect it was having on his handling of various matters.  However, no one at Cohen Weiss at the time of the application appreciated the situation in which, upon information and belief, Mr. Hock found himself and by the terms of the Policy that Travelers itself drafted, Travelers is not permitted to rescind based on an "innocent" misrepresentation or omission.  Rather, Travelers can only deny coverage for a claim if Cohen Weiss deliberately misrepresented or concealed information from Travelers—and nowhere has Travelers ever alleged, much less suggested, that anyone at Cohen Weiss, including the Mr. Hock, deliberately concealed or omitted information from the Application.

3.      Travelers' attempt to rescind the Policy and avoid having to pay for the proposed covered settlements stands in stark contrast to Travelers depiction of itself as the market leader in providing dependable Lawyers Professional Liability Coverage.  Part of what Travelers claims separates it from its competitors is willingness to offer a "broad array" of "risk management services" to assist law firms face "losses resulting from negligence, errors, and omissions" in the practice of law including Travelers' expertise in facilitating claim repair, "mitigating legal liability exposures," and helping law firms avoid the adverse publicity associated with litigating a claim.  Yet everything Travelers has done from the outset of handling the Underlying Claims is antithetical to the promises it makes to law firms who turn to Travelers to cover the very type of liability that CWS now faces.

4.      Rather than deliver on its commitment to help Cohen Weiss navigate one of the most difficult set of circumstances in the firm's history, Travelers put its bottom line and its own interests ahead of its insureds to the detriment of Cohen Weiss, its employees and its clients. Over the past two years, from the very first month that Travelers undertook the defense of the Underlying Claims, Travelers has engaged in egregious bad faith claims-handling practices that have prejudiced CWS' ability to settle the Underlying Claims within policy limits and has unquestionably exposed CWS to greater liability.

5.      Travelers' bad acts, as alleged herein, begin with its appointment of incompetent and disloyal defense counsel who behaved as if it were Travelers' lackey rather than independent defense counsel.  The appointed-defense counsel was ethically conflicted from day one of its representation of CWS, having previously represented Travelers in a coverage action against a law firm in which Travelers sought to rescind a policy on the same unfounded grounds it seeks to do so here.

6.      Appointed-defense counsel worked hand in hand with Travelers to frustrate, if not completely abdicate, the mounting of a vigorous defense for CWS, and instead focused on creating excuses for Travelers to avoid having to settle the claims.  Travelers refused to schedule or attend mediation with the underlying claimants, or to engage in settlement negotiations, often times without informing CWS of its unilateral decision to postpone attempting to settle the Underlying Claims.  Indeed, Travelers ambushed CWS with this lawsuit in August 2019 while, upon information and belief, at the same time having surreptitiously decided to cease negotiations with the underlying claimants that CWS believed were underway and ongoing.

7.      When CWS finally convinced Travelers to attend two rounds of mediation in September 2019, CWS was left to write its own mediations statements, prepare its own valuation of the Underlying Claims for purposes of settlement, and to negotiate with the mediator and representatives of Local 1205 and JIBEI.  The defense counsel appointed by Travelers made a perfunctory appearance at the mediations having isolating themselves in a room alone and having no contact with CWS, the mediator, or the underlying claimants.  Travelers' claim representative did not offer much more assistance, refusing to share his valuation of the Underlying Claims with CWS or the mediator while at the same time refusing to agree to fund the proposed settlements that were reached.

8.      CWS is therefore entitled to the full benefits of the valid Policy for which Cohen Weiss paid significant premiums, including indemnity for the Underlying Claims, and damages for Travelers' bad faith course of conduct in deliberately mishandling the Underlying Claims.

## JURISDICTIONAL ALLEGATIONS

9.      CWS counterclaims and seeks a declaratory judgment pursuant to 28 U.S.C. § 2201.  The Court has subject matter over the declaratory relief claims pursuant to 28 U.S.C. §§

1331 and 1332, and the remaining counterclaims arising under state law pursuant to 28 U.S.C. §

1367.

## FACTUAL ALLEGATIONS

### I.   COHEN WEISS' PROFESSIONAL LIABILITY INSURANCE COVERAGE

10.     In consideration of the payment of substantial premiums, Travelers issued to

Cohen Weiss claims-made 1st Choice+ New York Lawyers Professional Liability Policy, No.

105806447, with a policy period of July 2, 2017 to July 2, 2018 (the "Policy").  The Policy has a

limit of liability of $5,000,000.00.

11.     The Policy provides:

> [Travelers] will pay on behalf of the **Insured**, **Damages** and **Defense Expenses**
> for any **Claim** first made during the Policy Period or any extended reporting
> period that applies, that is caused by a **Wrongful Act** committed on or after any
> applicable Retroactive Date set forth in ITEM 5 of the Declarations, provided that
> no **Insured** on the Knowledge Date set forth in ITEM 5 of the Declarations had
> any basis to believe that such **Wrongful Act** might reasonably be expected to be
> the basis of a **Claim**.

12.     ITEM 5 of the Declarations page of the Policy does not include a Retroactive

Date.  The Knowledge Date is July 2, 2006.

13.     Cohen Weiss is the **Named Insured** under the Policy as set forth in the

Declarations page to the Policy.

14.     **Insured** is defined to include any natural person who is or was a partner,

employee, member of the board of managers, director, executive officer or shareholder of Cohen

Weiss who is acting within the scope of their duties on behalf of Cohen Weiss.

15.     **Principal Insured** is defined to include "a member of the board of managers,

director, executive officer, [or] natural person partner" of Cohen Weiss.

16.     **Claim** is defined as "(i) a demand for money or services; (ii) a civil proceeding

commenced by service of a complaint or similar pleading; or (iii) a written request to toll or

waive a statute of limitations relating to a potential civil or administrative proceeding, against any **Insured** for a **Wrongful Act**."  The Policy further states that a **Claim** will be deemed to be made on the earliest date that a **Principal Insured** receives notice of such a **Claim.**

17.     **Potential Claim** is defined as "any conduct or circumstance that might reasonably be expected to be the basis of a **Claim**."

18.     "**Wrongful Act**" is defined to include "any actual or alleged act, error, omission, . . . in the rendering of, or failure to render, **Professional Services**" by the **Named Insured** or any **Insured** while acting within the scope of their duties on behalf of Cohen Weiss.

19.     **Professional Services** is defined to include services provided in the capacity as a lawyer.

20.     **Damages** is defined in relevant part to include "money which an **Insured** is legally obligated to pay as settlements, judgments, compensatory damages, or prejudgment interest."

21.     There is no dispute that the Underlying Claims constitute a **Claim** as defined in the Policy.

22.     Section XIX of the Policy, entitled "Misrepresentation," addresses the limited circumstances under which Travelers may refuse to cover a claim because of an Insured's misrepresentation or omission of facts:

> This policy does not apply to any **Claim** against any **Insured** under this policy if any **Principal Insured** has *intentionally* concealed or misrepresented any material fact or circumstance concerning such **Claim**, this insurance or the subject thereof, provided that this section XIX. MISREPRESENTATION *does not apply* if such **Principal Insured** *mistakenly*:
>
> A. failed to disclose information to [Travelers]; or
>
> B. misleads [Travelers].

No representation will be deemed material unless knowledge by [Travelers] of the facts misrepresented would have led to the refusal by [Travelers] to issue this policy.

23.     Travelers has never alleged, either in pre-suit communications with Cohen Weiss or in this litigation, that any **Principal Insured**, including Mr. Hock, Ms. Rachelson or Ms. Henry, ever *intentionally* concealed or misrepresented any material fact or circumstance.

24.     The New York Cancellation and Nonrenewal Endorsement to the Policy further limits when and why Travelers is permitted to cancel the Policy.  During the first 60 days after the Policy goes into effect Travelers may cancel the Policy for any reason.  After that, and through the end of the Policy Period (i.e., through July 2, 2018), Travelers may only cancel the Policy for certain enumerated reasons, including among other things, "[d]iscovery of fraud or material misrepresentation in *obtaining this policy* or in presenting a Claim . . . " or "[t]he revocation or suspension of an **Insured's** license to practice their profession."

## II.    COHEN WEISS' DISCOVERY OF MR. HOCK'S ALLEGED MISHANDLING OF MATTERS

25.     Cohen Weiss is one of the oldest and most esteemed labor and employee benefits firms in the country, and one of only a few firms devoted exclusively to defending the rights of working people, their unions and their benefit plans across a multitude of industries.

26.     Ms. Rachelson, who has been with Cohen Weiss for more than 40 years, started working there upon graduation from Harvard Law School in 1978.  She is the head of the employee benefits practice, which included Mr. Hock when he was still a partner at Cohen Weiss.

27.     Mr. Hock started at Cohen Weiss' New York office as an associate in 2003 and was elected partner in July 2012.  He was a sophisticated and creative lawyer who specialized in the collection of employee benefit plan contributions and related amounts, as well as the

representation of unions and plans in bankruptcy and other reorganization proceedings.  Over the course of his fourteen-year history at the firm, Mr. Hock was responsible for the collection of many millions of dollars in employee benefit plan collections (and related interest and other penalties and attorney's fees) for Cohen Weiss clients.  He was largely in charge of this practice area for Cohen Weiss, supervising other attorneys in their work.

28.     Because of Mr. Hock's long track record of success, no one at Cohen Weiss, and upon information and belief, none of Mr. Hock's clients, suspected that he was, upon information and belief, impaired and not able to properly manage certain of his cases.  Upon further information and belief, Mr. Hock himself did not appreciate his impairment while practicing at CWS.

29.     That image of Mr. Hock as a highly accomplished and successful lawyer was unexpectedly blown apart in September 2017.  What started with an unexpected notification to Cohen Weiss on September 13, 2017 that Mr. Hock had been suspended from practicing law due to a failure to renew his attorney registration rapidly developed into a situation that Cohen Weiss never could have anticipated.  Ms. Rachelson oversaw the transition of his cases to other Cohen Weiss attorneys.  As part of that process, Cohen Weiss discovered that Mr. Hock had failed to (i) timely pursue post-judgment collections; (ii) timely prosecute collection lawsuits through to judgment; (iii) name and pursue relief against additional liable parties; (iv) conduct adequate discovery of available assets and income to satisfy a default judgement; and (v) convey the correct status of litigation or post-judgment collection efforts to clients.

30.     On October 13, 2017, Cohen Weiss terminated Mr. Hock's position as partner, and upon information and belief, Mr. Hock voluntarily sought extended treatment at a medical

facility.  Eventually, disciplinary proceedings were commenced against Mr. Hock, and his law license was terminated effective as of 2018.

31.     As a result of Cohen Weiss' contacting its clients with whom Mr. Hock worked, immediately upon Mr. Hock's suspension, to inform them of the suspension and subsequent investigation, Cohen Weiss received a letter on October 13, 2017, from one of its clients, JIBEI, seeking damages as a result of Mr. Hock's mismanagement of their cases.  Beginning in or about November 2017, Cohen Weiss received similar demands from the Local 1205 Funds.  JIBEI and the Local 1205 Funds each allege that as a direct and proximate result of Mr. Hock's (in)actions they purportedly have been unable to collect millions of dollars in judgments.

32.     JIBEI and the Local 1205 Funds have not yet commenced litigation against Cohen Weiss or any of its current or former partners.  The parties entered into tolling agreements which have been extended to allow the parties to mediate JIBEI's and the Local 1205 Funds claims for legal malpractice.  In mid-September, as the possibility that Local 1205 Funds and/or JIBEI would file suit increased, both JIBEI and the Local 1205 Funds agreed to settle their legal malpractice claims for certain confidential amounts.  As of the date of the filing of these counterclaims, Cohen Weiss has been unable to finalize the settlements because Travelers has refused to fully fund the Local 1205 settlement and has deemed that the amount JIBEI has demanded—which is well within the Policy's limits—is unreasonable.

33.     Cohen Weiss was able to secure one last 90-day extension of the tolling agreement from the Local 1205 Funds and has requested a further extension from JIBEI, but if the settlements are not funded by Travelers when the Local 1205 Funds' tolling agreement extension expires, Cohen Weiss and its current and former partners will be forced to defend

against at least one, and more likely multiple malpractice actions that carry each with them a risk of judgment in excess of the Policy's limits.

## III.   COHEN WEISS' CLAIM FOR COVERAGE FOR THE UNDERLYING CLAIMS OF LEGAL MALPRACTICE

34.     The Underlying Claims stemming from Mr. Hock's handling of their various cases involve **Wrongful Acts** of a **Principal Insured** undertaken while rendering **Professional Legal Services** that constitute covered **Claims** under the Policy.  As such, Travelers's obligation to (i) defend and pay defense costs incurred in connection with the **Claims**, as well as (ii) to indemnify its **Insureds** from all damages, direct or consequential, and expenses resulting from the **Claims**, up to the respective limits in the Policy, is triggered.  Yet Travelers has not met either of these obligations under the Policy and has committed numerous breaches of the Policy as well as engaged in repeated and ongoing bad faith conduct.  These breaches and bad faith conduct have resulted in Cohen Weiss, Ms. Rachelson, and Ms. Henry being prejudiced in the defense that they were provided, and their inability to settle at reasonable amounts and within policy limits claims that have the potential to cause significant financial harm to Cohen Weiss if successfully litigated to verdict by JIBEI and/or the Local 1205 Funds.

35.     On September 14, 2017, one day after Cohen Weiss was informed that Mr. Hock had been suspended for failure to renew his attorney registration, it gave notice to Travelers that the firm might face a **Potential Claim**.  Travelers disagreed and responded a week later that it did not view the suspension of Mr. Hock as rising to the level where Cohen Weiss might reasonably expect to face a **Claim**.  Nor did Travelers attempt to cancel the Policy at that point, despite the fact that it was permitted to do so under the terms of the Policy.

36.     On September 28, 2017, concerned that the facts that it was uncovering about Mr. Hock's handling of certain matters might lead to claims, Cohen Weiss again gave notice to

Travelers of a **Potential Claim**, alerting Travelers to the developing situation.  Travelers did not respond.

37.     On October 6, 2017, Cohen Weiss wrote for a third time to Travelers to provide yet additional details of facts that it had uncovered and to request that Travelers (i) execute a Confidentiality and Non-Disclosure Agreement so that Cohen Weiss could freely provide additional information to Travelers; (ii) acknowledge the existence of a **Potential Claim**; and (iii) consent to and pay for Cohen Weiss hiring investigation counsel.

38.     On October 13, 2017, while waiting for Travelers to respond, Cohen Weiss received JIBEI's demand letter and promptly provided a copy of it to Travelers that same day.

39.     Travelers finally responded on October 18, 2017 and agreed, subject to a general reservation of rights under the Policy's terms and provisions, to appoint the firm Furman, Kornfeld & Brennan, LLP ("FKB") to defend Cohen Weiss.  Travelers refused to pay any pre-claim expenses and denied Plaintiff's request for Cohen Weiss' selected and preferred law firm Hinshaw & Culbertson to act as investigation counsel.

40.     In addition, each time that the Local 1205 Funds sent demand letters to Cohen Weiss on November 7, 2017, January 5, 2018 and April 26, 2018, Cohen Weiss immediately tendered the claims to Travelers for defense and indemnity coverage.  However, Travelers delayed until May 30, 2018 to appoint defense counsel to defend Cohen Weiss against the Local 1205 Funds claims.  Travelers again appointed FKB to defend.

41.     Cohen Weiss continued to communicate regularly with Travelers throughout the remainder of 2017 and into early 2018 about the results of its investigation.  Cohen Weiss routinely updated Travelers with the specific details Cohen Weiss was uncovering about how Mr. Hock had potentially mishandled various cases.

42.     On January 8, 2018, Travelers responded for the first time to the information that Cohen Weiss had been providing and, among other reservations of rights, reserved its rights to rescind the Policy based on how Cohen Weiss had answered a question on the Application. Cohen Weiss informed Travelers that it disagreed with any attempt to use responses on the Application to void coverage.

43.     The Application asked, among other things:

> Do you or any member or employee of your firm have knowledge of any incident, act, error, or omissions that is or could be the basis of a claim under the proposed professional liability policy?

Cohen Weiss answered "no" because, at the time of the Application on April 25, 2017, no one at Cohen Weiss had any knowledge of Mr. Hock's impairment or his resulting inability to handle cases, including upon information and belief, Mr. Hock himself.  Nor could a reasonable person have appreciated at that time, based on Mr. Hock's success as a lawyer, the nature or extent of his mismanagement of cases.

44.     The Application also included the following language:

> The statement and representations made in this application are true and complete and will be deemed material to the acceptance of the risk assumed by Travelers in the event an insurance policy is issued.
>
> If the information supplied in this application changes between the date of the application and the effective date of any insurance policy issued by Travelers in response to this application, you will immediately notify us of such changes and we may withdraw or modify any outstanding quotation or agreement to bind coverage.

45.     Cohen Weiss did not supplement its answer of "no" to the question about circumstances that could potentially lead to a claim prior to the inception of the Policy on July 2, 2017 because there was nothing that occurred between the date of the Application and

inception of the Policy that alerted anyone at Cohen Weiss, including upon information and belief Mr. Hock himself, of the need to alter the answer to that question.

46.     On June 14, 2018, Travelers informed Cohen Weiss that Travelers had commenced an internal investigation that would be handled separately from Travelers' defense of the Underlying Claims and requested numerous categories of documents from Cohen Weiss as part of the coverage investigation, including all documents that Cohen Weiss had provided to FKB.

47.     Cohen Weiss responded on August 1, 2018, pointing out that many of the documents Travelers requested had already been provided by Cohen Weiss, while other documents could not be provided to Travelers because of attorney-client and work product protections.

48.     Over the course of the next several months, Cohen Weiss, Travelers, and each party's respective coverage counsel continued to discuss the exchange of documents.  Cohen Weiss reviewed the defense files provided to FKB for privilege and subsequently turned over most of those files to Travelers.  In addition, Cohen Weiss provided additional documents from its internal files that had not been provided to defense counsel in response to Travelers' requests.

49.     Despite the fact that Travelers had available to it as early as September 2017 the very information that it now relies upon to assert rescission of the Policy, and upon information and belief elected in early 2018 not to renew the Policy, Travelers nonetheless waited almost two years until August 2019 to file this litigation seeking rescission and to return the premiums that Cohen Weiss paid to secure coverage.

50.     Upon information and belief, Travelers chose to file this litigation at the time it did not because it had only recently discovered facts that could support rescission, but because

Travelers either had been asked or knew that it would be asked to fund reasonable settlements of the JIBEI and the Local 1205 Funds claims, and rather than pay, Travelers wanted leverage over Cohen Weiss to demand that Cohen Weiss make a significant contribution to those settlements or otherwise face the expense and risk associated with this coverage action.

## IV.   TRAVELERS' ONGOING COURSE OF CONDUCT IS DESIGNED TO AVOID FUNDING REASONABLE SETTLEMENTS THAT ARE UNDISPUTEDLY COVERED BY THE POLICY

51.    Travelers has, at every turn, undermined Cohen Weiss' rights under the Policy, including from the first month after Cohen Weiss gave notice of the Underlying Claims when Travelers selected defense counsel with an eye towards defending against the existence of coverage rather than defending Cohen Weiss against the Underlying Claims.  Travelers' hand-picked defense counsel, FKB, was conflicted from the start.  Unbeknownst to Cohen Weiss, the very same lawyers that Travelers had appointed to represent Cohen Weiss had previously represented Travelers as coverage counsel in a similar coverage case Travelers instituted against another law firm wherein Travelers attempted to rescind the very same type of policy at issue here.  Neither FKB nor Travelers disclosed this prior representation to CWS.

52.    Aside from irreconcilable conflicts of interest, the defense firm appointed by Travelers fell far short in myriad of ways in meeting its obligations as independent defense counsel to CWS.  Among FKB's failures to defend CWS that, upon information and belief, Travelers directed and/or approved were:

- a refusal to independently assess CWS' potential liability in the Underlying Claims leaving CWS to perform its own analysis;

- a failure to pursue discovery in a timely manner from the Local 1205 Funds or JIBEI, which then allowed Travelers to claim that it had to cancel a scheduled mediation in

April 2019 (without Cohen Weiss' consent) because the case was not ready to be

evaluated for settlement;

- a failure to meaningfully participate in any of the three underlying mediations that took

  place in December 2018 and September 2019; and

- purporting to withdraw as defense counsel on October 10, 2019 when no replacement

  counsel had been selected and CWS was in the middle of trying to negotiate settlements

  with the underlying claimants and the tolling agreements were soon to expire.

53.      Upon information and belief, Travelers either directed or was at least aware of

FKB's numerous failings, all of which were designed to or had the effect of advancing Travelers'

interests in delaying or avoiding payment of settlements altogether over and above CWS'

interests in entering into timely and reasonable settlements in order to avoid imminent legal

malpractice litigation.  In fact, despite Cohen Weiss repeatedly complaining about how deficient

FKB had been in providing a defense and the prejudice that it was causing to Cohen Weiss,

Travelers refused to appoint different defense counsel until two weeks ago, only *after* Travelers'

had commenced this action and refused to fully fund the proposed settlements that CWS had

negotiated of the Underlying Claims.

54.      FKB was not alone in its unfair and damaging treatment of CWS.  Travelers itself

failed to deal honestly or in good faith with CWS.  For instance, after attending one mediation in

December 2018, which concluded with the underlying claimants willing to engage in further

settlement negotiations, Travelers repeatedly refused to participate in any additional mediations

throughout most of 2019, going so far as to unilaterally cancel a mediation that was supposed to

have taken place in April 2019, and thereafter failing to engage or withdrawing from settlement

discussions with the underlying claimants without telling CWS, all the while preparing to ambush CWS with the unexpected coverage litigation in August 2019.

55.     CWS was left in in the untenable position of being represented by ineffective and conflicted defense counsel who had not adequately prepared a defense to the legal malpractice claims that were on the immediate horizon and likely to be filed because of Travelers' delays in trying to settle those claims, while at the same time unexpectedly defending against a coverage litigation suit in which Travelers sought to belatedly rescind the Policy.

56.     Travelers only reluctantly agreed to attend two separate mediations in September 2019 that Cohen Weiss had managed to arrange with the Local 1205 Funds and JIBEI.  Any ruse that appointed-defense counsel or Travelers was going to assist CWS in settling the Underlying Claims was over.

57.     Cohen Weiss had to write the major portion its own mediation statements with very little help from defense counsel, who contributed a small part of one statement that turned out to be based on incorrect law.  Cohen Weiss also had to attempt to value the Underlying Claims for settlement purposes without the assistance either of the expert witness who supposedly had been retained to assist in CWS' defense, or Travelers' claims-handler who refused to share his view of what would constitute a reasonable settlement value.  At the mediation, defense counsel did not assist Cohen Weiss who was left to negotiate directly with the mediator and the Local 1205 Funds and JIBEI, with very little said by Travelers other than to complain that the settlements offered by the underlying claimants were too expensive.

58.     Travelers has since refused to fully fund either of the settlement amounts discussed at the mediations, and CWS has not been able to finalize the settlements with either the Local 1205 Funds or JIBEI.

59.     If Travelers does not fully fund the reasonable settlement offers from the Local 1205 Funds and JIBEI, then CWS will face malpractice suits and liability that is potentially in excess of the limits of the Policy, circumstances which were otherwise completely avoidable had Travelers funded those settlements as it is required to do under the Policy.

## COUNT ONE OF THE COUNTERCLAIMS
### (Declaratory Relief)

60.     CWS repeats and realleges the allegations set forth in paragraphs 1 through 59 of the Counterclaims as if fully set forth herein.

61.     The parties dispute Travelers' legal obligations under the Policy to indemnify CWS for damages incurred in the Underlying Claims, whether in the form of confidential settlement payments or judgments.

62.     The parties also dispute whether the proposed settlement of JIBEI's claims against Cohen Weiss is reasonable, and whether Travelers has unreasonably withheld its consent to settle those claims.

63.     An actual controversy of a justiciable nature presently exists between CWS and Travelers concerning the proper construction of the Policy, and the rights and obligations of the parties thereto, with respect to Travelers' duties to indemnify CWS from the Underlying Claims, including to fully fund the proposed settlements.

64.     CWS is entitled to a judgment by this Court declaring that Travelers is not entitled to rescission of the Policy.

65.     CWS is also entitled to a judgment by this Court that Travelers must fully fund the proposed settlements of the Underlying Claims, both of which are reasonable and within the limits of the Policy.

66.     In the event that, because Travelers has failed to fully fund the proposed settlements as of the time of the filing of these Counterclaims, CWS must pay amounts in excess of the current proposed settlements, CWS is further entitled to a judgment that Travelers must pay all damages that CWS becomes obligated to pay in connection with the Underlying Claims, including in excess of the limits of the Policy.

67.     CWS has no adequate remedy at law.

68.     The issuance of prompt declaratory relief by this Court is desirable and necessary to resolve the existing controversy between the parties.

## COUNT TWO OF THE COUNTERCLAIMS
### (Breach of Contract)

69.     CWS repeats and realleges the allegations set forth in paragraphs 1 through 59 of this Counterclaims as if fully set forth herein.

70.     The Policy constitutes a valid and enforceable contract between Travelers and CWS.

71.     Cohen Weiss paid all premiums, provided prompt notice of the Underlying Claims, and otherwise performed all obligations required of it under the Policy.

72.     Travelers has breached its obligations under the Policy by unreasonably withholding its consent to settle JIBEI's claims and refusing to fund either the JIBEI or the Local 1205 Funds proposed settlements.

73.     As a direct, proximate and foreseeable result of Travelers's failure to settle the Underlying Claims and fully fund the proposed settlement amount, Travelers has deprived CWS of the benefit of insurance coverage for which Cohen Weiss has paid a substantial premium.

74.     CWS will suffer damages in an amount to be determined at trial, plus consequential damages, and pre- and post-judgment interest to the extent permitted by law.

75.     Consequential damages were reasonably contemplated by the parties at the time that they entered into the Policy.

## COUNT THREE OF THE COUNTERCLAIMS
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

76.     CWS repeats and realleges the allegations set forth in paragraphs 1 through 59 of the Counterclaims as if fully set forth herein.

77.     The Policy contains an implied covenant of good faith and fair dealing.

78.     The implied covenant of good faith and fair dealing requires that Travelers act in good faith, deal fairly with CWS, and take no action to interfere with CWS' rights under the Policy, including undermining CWS' privileged relationship with defense counsel or unreasonably withholding consent to settle the Underlying Claims or fully funding the proposed settlement of those Underlying Claims as detailed above.

79.     Pursuant to that implied covenant, Travelers also was required to refrain from arbitrary or unreasonable conduct that would prevent CWS from receiving the fruits of its bargain or frustrate the overarching purpose of the Policy.

80.     Through these actions, Travelers has breached the implied covenant of good faith and fair dealing under the Policy.

81.     Travelers' conduct, as described above, also was undertaken in bad faith and without any reasonable justification.

82.     Upon information and belief, Travelers has engaged in the aforementioned conduct (a) with a willful and conscious disregard of CWS' rights; (b) with the intent to injure CWS; and (c) has subjected CWS to cruel and unjust hardships in disregard of CWS' rights, such as to constitute oppression, fraud and malice.

83.     As a result of Travelers's interference with CWS' defense of the Underlying

Claims and unreasonable refusal to settle those Claims, CWS has been damaged in an amount to

be determined at trial.

84.     CWS is entitled to consequential damages flowing from Travelers's violation of

the implied covenant of good faith and fair dealing, including without limitation, consequential

damages, and the attorneys' fees and costs incurred by Cohen Weiss in enforcing its and Ms.

Rachelson's and Ms. Henry's rights under the Policy.

85.     Consequential damages were reasonably contemplated by the parties at the time

that they entered into the Policy.

### COUNT FOUR OF THE COUNTERCLAIMS
### (Deceptive Business Practices – General Business Law § 349)

86.     CWS repeats and realleges the allegations set forth in paragraphs 1 through 59 of

the Counterclaims as if fully set forth herein.

87.     Travelers at all times from the appointment of FKB through the filing of this

action and continuing thereafter through the present time, has acted in bad faith and through a

pattern of deceptive conduct that has injured CWS.

88.     The deceptive acts and practice by Travelers, include, without limitation, (i)

appointing incompetent and ethically conflicted defense counsel with divided loyalties; (ii)

exercising control over defense counsel to ascertain defenses to coverage rather than mounting a

defense against the Underlying Claims; (iii) relying on false pretenses or circumstances created

by its own appointed defense counsel to justify Travelers' inordinate delays in reaching coverage

positions, claim valuations or participation in resolution of the Underlying Claims; and (iv)

failing to attempt in good faith to participate in and effectuate a prompt, fair, and equitable

settlement of the Underlying Claims.

89.     Travelers has also taken improper positions and engaged in inordinate delays, which it improperly and without a good-faith basis purported to justify as interpretations of the same standard form insurance policy language that is, upon information and belief, routinely included in "1st Choice+ New York Lawyers Professional Liability" policies sold to law firms in New York and elsewhere, in a manner that has and continues to injure policyholders with similar language.

90.     Travelers' conduct constitutes deceptive acts and practices in violation of General Business Law § 349.

91.     Travelers' conduct was knowing, reckless and willful.

92.     As a result of Travelers' deceptive acts and practices, Cohen Weiss has suffered and will continue to suffer damages.

93.      CWS is entitled to compensatory, consequential and punitive damages, as well as prejudgment interest and attorney's fees and costs, against Travelers, to be proven in trial.

## PRAYER FOR RELIEF

WHEREFORE, Cohen Weiss, Ms. Rachelson and Ms. Henry pray for relief as follows:

(a)     On the First Count of the Counterclaim, CWS requests that this Court enter a declaratory judgment in favor of Cohen Weiss, Ms. Rachelson and/or Ms. Henry and against Travelers declaring that Travelers has an obligation to fully pay Cohen Weiss, Ms. Rachelson and/or Ms. Henry for, and/or to pay on their behalf, all reasonable settlements of the Underlying Claims or judgments against Cohen Weiss, Ms. Rachelson and/or Ms. Henry on the Underlying Claims until the limits of the Policy are exhausted;

(b)     On the Second Count of the Counterclaim, CWS requests that the Court enter judgment against Travelers, awarding Cohen Weiss, Ms. Rachelson and/or Ms. Henry damages

in an amount to be determined at trial, including consequential damages, cost and attorneys' fees and pre- and post-judgment interest to the extent permitted by law;

(c)      On the Third Count of the Counterclaim, CWS requests that the Court enter judgment against Travelers, awarding Cohen Weiss, Ms. Rachelson and/or Ms. Henry damages in an amount to be determined at trial, including punitive damages, consequential damages, cost and attorneys' fees and pre- and post-judgment interest to the extent permitted by law;

(d)      On the Fourth Count of the Counterclaim, CWS requests that the Court enter judgment against Travelers, awarding Cohen Weiss, Ms. Rachelson and/or Ms. Henry damages in an amount to be determined at trial, including punitive damages, consequential damages, cost and attorneys' fees and pre- and post-judgment interest to the extent permitted by law;

(e)      For such other and further relief as the Court shall deem proper.

<u>**JURY DEMAND**</u>

Counterclaim Plaintiffs Cohen Weiss, Ms. Rachelson and Ms. Henry hereby demand a trial by jury on all issues so triable.

Dated:   October 30, 2019                    BLANK ROME LLP

/s/ Natasha Romagnoli
Natasha Romagnoli
Joao P. Santa-Rita
1271 Avenue of the Americas
New York, New York 10020
Tel: (212) 885-5265
Fax: (917) 332-3793
nromagnoli@blankrome.com

Anna K. Milunas (*Pro Hac Vice Pending*)
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Tel: (424) 239-3405
Fax: (424) 389-7220
amilunas@blankrome.com

*Attorneys for Defendants-Counterclaim*
*Plaintiffs Cohen, Weiss and Simon LLP, Jani*
*K. Rachelson and Marcelle J. Henry*